## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| QUENTIN O. LEWIS | CIVIL ACTION NO. 6:15-cv-02492 |
|     LA. DOC #549832 | |
| VS. | SECTION P |
| | JUDGE REBECCA F. DOHERTY |
| WARDEN N. BURL CAIN | MAGISTRATE JUDGE WHITEHURST |

### REPORT AND RECOMMENDATION

Before the Court is Petitioner Quentin O. Lewis's *pro se* petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2254.  Petitioner, an inmate incarcerated at the Louisiana State Penitentiary in Angola, Louisiana, seeks to attack his 2012 convictions for second degree murder and possession of a firearm by a convicted felon and the consecutive sentences of life and fifteen years imposed by the Sixteenth Judicial District Court, St. Mary Parish, Louisiana.  For the following reasons, it is recommended that this federal *habeas corpus* petition be **DENIED AND DISMISSED WITH PREJUDICE**.

### *BACKGROUND*

On June 15, 2012, Petitioner was found guilty as charged of second degree murder and possession of a firearm by a convicted felon.  (Doc. 22-1 at pp. 60-61.)

On July 24, 2012, he was sentenced to life imprisonment plus fifteen years.  (Doc. 1 at  ¶1-6; Doc. 22-10 at pp. 59-63.)

Petitioner appealed his conviction to the First Circuit Court of Appeals ("State First  Circuit"), arguing the following assignments of error: (1) the trial judge failed to grant Petitioner's challenges for cause of jurors Randall Robicheaux, Dana Lee, and Alicia Bercegeay; and (2) there was insufficient evidence to support Petitioner's identity as the perpetrator of the offenses.  (Doc. 22-11 at pp. 5-11.)  Petitioner submitted a Supplemental *Pro Se* brief which basically argued a motive for the false testimony of the State's witness.  (Doc. 22-11 at pp. 17-18.)

On November 1, 2013, the State First Circuit issued its decision, which summarized the facts of this case as follows:

> On the evening and early morning of May 15–16, 2010, around midnight, a shooting took place outside of Johnny Bo's Night Club located at 1534 Cypremort Road in St. Mary Parish.  The perpetrator, a masked male, approached a group of individuals who were in the parking lot and instructed them to come closer to him. The group ignored him and he pulled out a gun as he repeated the instruction.  As a wheelchair-bound female in the group tried to escape, the gunman fired one shot, followed by multiple additional gunshots as the rest of the group started running.  D'Angelo Williams, the victim, was one of the individuals in the line of fire and was struck in the head by a single gunshot and died as a result.  Deputy David Hines and Detective Scott Tabor of the Iberia Parish Sheriff's Office responded to the scene.
>
> Loria Lewis, [Petitioner's] mother, who lived on Cypremort Road near the club, discovered a black ski mask next to her porch and informed

2

> Deputy Hines.  Deputy Hines instructed Detective Tabor to recover the mask and place it into evidence.   [Petitioner] was arrested on May 17, 2010, and charged with Williams's murder.   The arresting officer, Sergeant Todd Anslum, indicated that [Petitioner] tried to escape from the back door of the residence where he was apprehended.  The State and [Petitioner] stipulated to the defendant's prior conviction of simple robbery and that [Petitioner] never applied for or received any permit to carry a firearm.

*State of Louisiana v. Lewis*, No. 2013KA0533, 2013 WL 5915213, at *1(La. App. 1 Cir. Nov. 1. 2013).  Upon rejecting Petitioner's two assignment of errors, the State First Circuit affirmed Petitioner's convictions and sentences and sent notice of judgment to Petitioner's appellate counsel.  *Id.* at *1-8 (Doc. 2-11 at p. 57.)

Thereafter, Petitioner filed his application for writ of *certiorari* in the Louisiana Supreme Court.  (See Doc. 1-2 at pp. 42-57.)  On August 25, 2014, the Louisiana Supreme Court denied the writ without comment.  *State of Louisiana ex rel. Quentin O. Lewis*, 2013-2849 (La. 8/25/2014), 147 So. 3d 691.

On September 5, 2015, Petitioner filed this federal *habeas corpus* petition (Doc. 1 at p. 11).  *See Spotville v. Cain,* 149 F.3d 374, 375 (5th Cir. 1998) (recognizing that a *pro se* federal habeas corpus petition is filed at the time the petitioner tenders the petition to prison officials for mailing).  Petitioner asserts that:

(1)     Petitioner's Fourteenth Amendment due process rights were violated "where the trial court abused its discretion where [Petitioner's] challenges for cause of jurors Randall Robicheaux, Dana Lee, and Alicia Bercegeay should have been granted when

their testimony as a whole indicated that they could not be fair and impartial" (Ground One); and

(2)     Petitioner's Fourteenth Amendment due process rights were violated because the evidence submitted at trial was insufficient to show that Petitioner committed second degree murder (Ground Two).

(Doc. 1 at pp. 4-5; Doc. 1-1 at pp. 7, 14.)  Respondent has filed an Answer and Memorandum in Opposition to federal *habeas corpus* relief.  (Doc. 21.)  Petitioner has submitted a reply.  (Doc. 23.)

## DISCUSSION

### A.     Timeliness

Title 28 U.S.C. § 2244(d)(1)(A) provides a one-year statute of limitations for the filing of federal petitions seeking *habeas corpus* relief by persons, such as petitioner, who are in custody pursuant to the judgment of a State court.  This limitation period generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . ." 28 U.S.C. § 2244(d)(1)(A).

Respondent contends that Petitioner may have filed his federal *habeas* petition after the expiration of the one-year limitations period if it can be determined that Petitioner did not properly file his application for writ of *certiorari* in the Louisiana Supreme Court.  (Doc. 21-1 at p. 9.)  In his brief submitted with his federal *habeas*

4

petition, Petitioner stated that the State First Circuit denied his direct appeal on November 1, 2013 and that, on December 25, 2014, he filed his writ of *certiorari* in the Louisiana Supreme Court.  (Doc. 1-1 at p. 2.)  When directed by the Court to submit proof of the date of filing, Petitioner provided a copy of the "Offender's Request for Legal/Indigent Mail" indicating his request on November 26, 2013, for prison officials to mail pleadings to the Louisiana Supreme Court and the District Attorney.  (Doc. 9 at p. 2.)

The evidence submitted by Petitioner indicates that his writ of *certiorari* was timely filed within thirty days after the First Circuit Court of Appeals affirmed Petitioner's convictions and sentences on November 1, 2013 and sent notice of judgment to Petitioner's appellate counsel.  *See* Louisiana Supreme Court Rule X, §5(a).[1]  Respondent has submitted nothing to dispute the fact that Petitioner's writ of *certiorari* was filed in a timely and proper manner with the Louisiana Supreme Court. Indeed, the record reflects that, on August 25, 2014, the Louisiana Supreme Court denied Petitioner's writ on the merits without comment.  *State of Louisiana ex rel. Quentin O. Lewis*, 2013-2849 (La. 8/25/2014), 147 So. 3d 691.

---

[1] Louisiana Supreme Court Rule X, §5(a) provides: "An application seeking to review a judgment of the court of appeal . . . shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal . . . . No extension of time therefor will be granted."

Petitioner's convictions became final on November 24, 2014, when Petitioner failed to file a petition for writ of certiorari with the United States Supreme Court within ninety days after the Louisiana Supreme Court denied his writ. *See Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003); *Flanagan v. Johnson,* 154 F.3d 196, 197 (5th Cir. 1998); 28 U.S.C. § 2244(d)(1(A); SUP. CT. R. 13.1.   Accordingly, Petitioner's federal *habeas* petition, which was submitted to prison authorities on September 5, 2015, is timely filed in this Court.

## B.   *Exhaustion and Procedural Default*

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509 (1982); *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999). The scope of federal habeas review is limited by the intertwined doctrines of procedural default and exhaustion.

In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts in a "procedurally proper manner." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir.2001). Moreover, each claim must be presented to the state's highest court, even when

review by that court is discretionary.  *Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir.1998).  In Louisiana, the highest court is the Louisiana Supreme Court.

Thus, in order for a Louisiana prisoner to have exhausted his state court remedies, he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner.  *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).  Failure to exhaust all remedies for a particular claim results in that claim being denied as procedurally defaulted. "Procedural default exists where (1) a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, or (2) the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred.  *See Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).  In either instance, the petitioner is deemed to have forfeited his federal have as claim.  *Bledsue v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999).

## 1.    *Ground One - Procedural Default*

Respondent asserts that Petitioner's claim in Ground One should be procedurally barred because Petitioner failed to present the claim either before the State First Circuit or the Louisiana Supreme Court.  (Doc. 21-1 at pp. 9-11.) Respondent contends that: (1) Petitioner's brief to the State First Circuit, prepared by

appellate counsel, only cited state court cases and statutes in support of the argument that the three jurors could not be "fair" and "impartial;" and (2) other than a passing references that the State First Circuit erroneously interpreted the U.S. Constitution, Petitioner made no mention of a federal constitutional basis for his juror challenge claim in his writ application to the Louisiana Supreme Court.  (Doc. 21-1 at pp. 10-11.

Petitioner responds that he "fairly" presented the substance of his due process claim in Ground One to the state courts by citing two state court cases which had interpreted portions of the U.S. Constitution.  (Doc. 23 at pp. 5-6.)  While not discussing whether it had actually presented the substance of his due process claims before the Louisiana Supreme Court, Petitioner argues that the Louisiana Supreme Court rejected Petitioner's writ application on the merits.  (Doc. 23 at p. 7-10.)

Petitioner claims that his Fourteenth Amendment due process rights were violated "where the trial court abused its discretion where [Petitioner's] challenges for cause of jurors Randall Robicheaux, Dana Lee, and Alicia Bercegeay should have been granted when their testimony as a whole indicated that they could not be fair and impartial." (Doc. 1-1 at p. 15.)  As part of this due process claim, Petitioner contends that both Robicheaux and Bercegeay testified in voir dire that they knew several of the police officers who would be testifying.  (Doc. 1-1 at pp. 15-16.)

Upon review of the state court records, Petitioner did not present his due process claim in Ground One before the Louisiana state courts.  Both Petitioner's appellate brief submitted to the State First Circuit and his writ application rely exclusively on Louisiana statutes and case law to support his argument that each of the three jurors would not be fair and impartial based on their *voir dire* testimony. (Doc. 1-2 at pp. 50-53; Doc. 22-11 at pp. 7-8).

While Petitioner cites to two Louisiana cases that include a discussion on the Due Process Clause,  Petitioner never specifically asserted the due process claim he now makes in the instant federal *habeas* petition.  *See Norris v. Davis*, 826 F.3d 821, 831 n.9  (5th Cir. 2016) (rejecting federal *habeas* petitioner's contention that he had "fairly presented" his prosecutorial misconduct claims to the state courts because he never indicated in his appellate brief that his claims were based on federal law).  It is also worth noting that Petitioner specifically referenced a federal due process claim in his direct appeal brief when discussing his claim that the evidence was insufficient to support murder.  (Doc. 22-11 at p. 11).  Such specificity was completely lacking in Petitioner's discussion of his juror challenge claim.  Finally, the characterization of his claim as a state court issue was reflected in the State First Circuit's opinion, which did not address the issue as one under federal constitutional law.

Respondent asserts that part of Petitioner's claims in Ground One also is procedurally defaulted because the state courts relied on an "adequate and

independent" state procedural basis in refusing to review the claim.  (Doc. 21-1 at p. 11.)  With regard to Petitioner's juror challenge claim citing Robicheaux's and Bercegeay's familiarity and friendship with police officers, the State First Circuit found that such claim was not raised at trial.  *Lewis*, 2013 WL 5915213, at \*4. Therefore, pursuant to Louisiana Code of Criminal Procedure article 841 or Louisiana Code of Evidence article 800(A), the State First Circuit concluded that the claim cannot be raised for the first time on direct appeal.  *Id.*

Federal courts typically refuse to reach the merits of questions of federal law if the state courts have expressly relied on an "adequate and independent" state procedural ground in refusing to review the claim. "An 'adequate' rule is one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims."  *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997) (citing *Amos v. Scott,* 61 F.3d 333, 339 (5th Cir. 1995)).  A state procedural rule enjoys a presumption of adequacy when the state court expressly relies on it in deciding not to review a claim for collateral relief.  *Id.* (citing *Lott v. Hargett* 80 F.3d 161, 165 (5th Cir. 1996)).  A procedural rule is "independent" when the last state court rendering a judgment in the case "clearly and expressly" indicates that its judgment rests on the procedural ground.  *Amos,* 61 F.3d at 338.

The procedural rules identified in *Lewis* satisfy both requirements. Petitioner herein makes no showing that Louisiana Code of Criminal Procedure article 841 or

Louisiana Code of Evidence article 800(a) are not evenhandedly applied. Thus, these state court procedural rules are presumed "adequate."  Review of published Louisiana jurisprudence establishes that the Louisiana courts of appeal regularly invoke the contemporaneous objection rule set forth in article 841 to decline review of similar claims when no contemporaneous objection is lodged.  It is well-settled that the Louisiana contemporaneous objection rules are independent and adequate state procedural grounds which preclude federal *habeas corpus* review of claims.  *See, eg. Duncan v. Cain*, 278 F.3d 537, 541 (5ᵗʰ Cir. 2002) ("It is well-settled that [Louisiana's] contemporaneous-objection rule is an independent and adequate state procedural ground"); *Jones v. Warden*, No.09-0769, 2010 WL 817311 at *10 (W.D. La. Jan. 13, 2010) (finding La. C.Cr.P. art. 841 is an adequate and independent ground to preclude federal *habeas* review).

Furthermore, the rules cited by the State First Circuit are "independent" because the last reasoned judgment on Petitioner's claims, that of the First Circuit Court on direct appeal, expressly relied solely on state procedural rules in declining to reach the merits of Petitioner's juror challenge claim pertaining to their familiarity and friendship with police officers.  Since the Louisiana Supreme Court did not specify reasons for its denial of review, it must therefore be presumed that the

Louisiana Supreme Court, like the State First Circuit, did not reach the merits of this claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

In sum, because Petitioner's due process claim in Ground One was not fairly presented to the state courts, the Court finds that this claim is procedurally defaulted. *See Coleman,* 501 U.S. at 729-30. The portion of Petitioner's claim relating to Robicheaux's and Bercegeay's familiarity and friendship with police officers also is procedurally defaulted based on the state court's application of an "adequate and independent" state procedural ground in refusing to review the claim.

### 2. *Ground One - Cause and Prejudice/Miscarriage of Justice*

Because Petitioner's due process claim in Ground One is procedurally defaulted, this Court may refuse to review the merits of this claim unless Petitioner demonstrates that he should be excused from application of the procedural default doctrine. Petitioner must show cause and prejudice for the default[2] or that a

---

[2] The Supreme Court explains that "cause" requires an impediment external to the defense: "[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (internal citations omitted).

miscarriage of justice[3]  will result from the denial of federal *habeas* review.  *See Coleman*, 501 U.S. at 750; *Finley v. Johnson*, 243 F.3d 215, 220-221 (5th Cir. 2001).

Petitioner asserts "that he has 'cause' by virtue of a state created impediment because the Louisiana Appellate Project is a State-Contracted Appellate Service for all prisoners convicted in Louisiana who cannot afford counsel so they, perfect appeals as fast as they can get them printed."  (Doc. 23 at p. 3 n.1).  Petitioner, however, offers no evidence to show that appellate counsel either negligently or deliberately failed to raise a Fourteenth Amendment due process issue with respect to his jury challenge claim.  Petitioner otherwise has failed to establish an "impediment external to the defense" which impeded appellate counsel.  The Court need not consider whether there is "actual prejudice" as Petitioner has failed to show the requisite "cause."  *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992).

Furthermore, Petitioner has not established that, as a factual matter he is actually innocent of the crimes for which he was convicted, and thus, he will not

---

[3]In order for a *habeas corpus* petitioner to avoid a procedural default by showing a fundamental miscarriage of justice, the petitioner must assert his actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496; *Glover*, 128 F.3d at 904. To support such an exception, the petitioner must allege that, as a factual matter, he did not commit the crime of which he was convicted. *Corwin v. Johnson*, 150 F.3d 467, 473 (5th Cir. 1998).  Thus, the petitioner must make a "colorable showing of factual innocence." *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir. 1996) (quoting *McClesky v. Zant*, 499 U.S. 467, 495 (1991)).

suffer a fundamental miscarriage of justice.  Petitioner, therefore, cannot make the requisite showing to allow this Court to consider Ground One, and it is procedurally barred from federal habeas review.

### 3.      *Ground One - Merits*

Even if Petitioner's due process claims in Ground One were not procedurally barred, the Court finds that this ground lacks merit.  The Sixth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, provides that every defendant has the right to trial by an impartial jury.  *See Morgan v. Illinois*, 504 U.S. 719, 727 (1992); *see also Parker v. Gladden*, 385 U.S. 363, 364, (1966) (per curiam).

The purpose of the Sixth Amendment is to ensure "jury impartiality with respect to both contestants: neither the State nor the defendant should be favored." *Holland v. Illinois*, 493 U.S. 474, 483 (1990).  "Our criminal justice system rests firmly on the proposition that before a person's liberty can be deprived, guilt must be found, beyond a reasonable doubt, by an impartial decisionmaker." *Virgil v. Dretke*, 446 F.3d 598, 605 (5th Cir. 2006).  To satisfy this mandate of impartiality, a juror must be able to "lay aside his impression or opinion and render a verdict based on the evidence presented in court."  *Irvin*, 366 U.S. at 723.

14

"The bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as [a] matter of law." *Solis v. Cockrell*, 342 F.3d 392, 395 (5th Cir. 2003) (alteration in original).  A juror harbors an actual bias, such that he may be excluded for cause, if his "views would prevent or substantially impair he performance of his duties as a juror in accordance with his instructions and his oath." *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000) (quoting *Wainwright v. Witt*, 469 U.S. 412, 424 (1985)).

To establish actual bias, a defendant must point to an "admission" or present "factual proof" of bias on the juror's part.  *United States v. Thomas*, 627 F.3d 146, 161 (5th Cir. 2010) (citing *United States v. Bishop*, 264 F.3d 535, 554 (5th Cir. 2001)). A juror is disqualified, for example, if he unequivocally states during voir dire that he cannot be fair and impartial.  *Virgil*, 446 F.3d at 613.  In determining whether a prospective juror exhibited actual bias during voir dire questioning, the reviewing court must consider the juror's answer in context with the initial question asked as well as with any subsequent modifications.  *See id.*, 446 F.3d at 608.

"Federal courts do not look favorably upon attempts to impute bias to jurors and only in extreme situations fo they justify such a finding." *Hatten v. Quarterman*, No. C-02-20, 2007 WL 2818009, at *12 (S.D. Tex. Sep. 25, 2007) (citing *Solis*, 342 F.3d at 396).  The application of "implied bias," therefore, is confined to a narrow

range of cases, with some examples of such bias including: (1) revelations that the challenged juror is an employee of the prosecuting office; (2) the juror is a close relative of the participants in the trial or criminal transaction; and (3) the juror witnessed the criminal activity or was involved in some other way with the criminal transaction. *Brooks v. Dretke*, 418 F.3d 430, 433 (5th Cir. 2005) (citing *Smith v. Phillips*, 455 U.S. 209, 222 (1982) (O'Connor, J., concurring)). In such cases of implied bias, a hearing in which the trial judge examines the juror with respect to obtaining assurances is inadequate for uncovering a juror's biases. *Phillips*, 455 U.S. at 222.

In this case, juror Robicheaux testified in pertinent part at trial during *voir dire* that: (1) he was a long-time friend of both the assistant district attorney prosecuting his case, Vincent Borne, and Mr. Borne's father (Doc. 22-4 at p. 54); and (2) even though they were friends, Robicheaux could be fair an impartial in Petitioner's criminal case (Doc. 22-4 at p. 55.) Petitioner's defense counsel challenged Robicheaux for cause, and the trial judge concluded:

> As I recall, Mr. Robicheaux's response is he indicated that certainly he knew Mr. Borne and have known Mr. Borne for many years.
>
> He indicated that they didn't have any business dealings, or any other particular dealings with each other, just that he knew him, and had known him for some time, considered to be friends.

16

On the question as to whether or not he could be fair and impartial to both the state and defense, Mr. Robicheaux was adamant that he could be fair and impartial.

I'm going to deny the challenge for cause.

(Doc. 22-4 at pp. 60-61.)

Juror Lee testified during *voir dire* that she  was the victim of three armed robberies that each occurred more than fifteen years ago but that he believed his past experiences would not affect his ability to be fair and impartial with respect to Petitioner's case.  (Doc. 22-5 at pp. 36-37.)  The trial court denied defense counsel's request to dismiss Lee for cause, citing Lee's thoughtful responses and open demeanor.  (Doc. 22-5 at pp. 52-53.)

Juror Bercegeay testified during *voir dire* that she had an uncle who had been recently murdered.  (Doc. 22-5 at p. 7.)  She further testified that she would have no problem serving as a juror in a murder case, that she could be fair and impartial, and that Petitioner's criminal case is different from her uncle's case.  (Doc. 22-5 at pp. 7-8, 33, and 38-39.)   The trial court denied defense counsel's request to dismiss Bercegeay for cause, finding that she was very open in answering the questions and that she indicated clearly her ability to be fair and impartial.  (Doc. 22-5 at p. 54.) Defense counsel used preemptory challenges to excuse Robicheaux, Lee, and

17

Bercegeay and ultimately exhausted the twelve preemptory challenges.  (Doc. 22-5 at p. 368.)

Under Article 797 of the Louisiana Code of Criminal Procedure, the prosecutor or defense counsel may challenge a juror for cause on the following pertinent grounds:

(2)     The juror is not impartial, whatever the cause of his partiality.  An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence; [and]

(3)     The relationship, whether by blood, marriage, employment, friendship or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict[.]

La. C. Cr P. 797.  While not discussing the Sixth Amendment, the Louisiana Supreme Court has held that:

The law in Louisiana is clear that a relationship between a prospective juror and the district attorney does not automatically disqualify the prospective juror from service.  The existence of a relationship, even one of blood or marriage, is not sufficient to disqualify a juror unless the facts reveal that the nature of the relationship is such that it is reasonable to conclude it would influence the juror in arriving at a verdict.  The law does not require that a jury be composed of individuals who are totally unacquainted with the defendant, the person injured by the offense, the district attorney, or defense counsel.  It requires that jurors be fair and unbiased.

*State v. Juniors*, 915 So. 2d 291, 306 (La. 2005) (internal citations omitted).

18

With regard to Robicheaux, Petitioner fails to show that Robicheaux's friendship with the prosecutor and the prosecutor's father influenced Robicheaux to such a degree that it affected his ability to render a fair and impartial verdict.  Rather, the totality of Robicheaux's responses to the *voir dire* questions demonstrates that he could fairly weigh the testimony of the witnesses, that he understood the presumption of innocence, that he accepted the State's burden to prove guilt beyond a reasonable doubt, that he understood the right against self-incrimination, that he understood Petitioner's right not to testify, that he could fairly weight the testimony of witnesses, and that ultimately he could be fair and impartial.  (Doc. 22-3 at pp. 77-78; Doc. 22-4 at pp. 15-16, 27-28, 36, 43, 55.)

Juror Lee testified in *voir dire* that he could decide Petitioner's case fairly and impartially even though he had been the victim of three armed robberies several years ago.  Likewise, juror Bercegeay's testimony reflects that she also could decide the case fairly and impartially despite the fact that her uncle had recently been murdered.  Jurors Lee and Bercegeay further responded that they could fairly weigh the evidence presented with an understanding of the presumption of innocence and the State's burden to prove guilt beyond a reasonable doubt.   (Doc. 22-5 at pp. 1-2, 19-20.)

In sum, Petitioner has pointed to  nothing in the record to show that any of these jurors harbored an actual bias that would prevent or substantially impair each

of their performances as a juror.  *Soria*, 207 F.3d at 242.  Furthermore, no evidence has been presented to establish the existence of implied bias on the part of jurors Robicheaux, Lee, and Bercegeay.  Thus, while defense counsel sought to challenge jurors Robicheaux, Lee, and Bercegeay for cause under Article 797, the record reflects no actual or implied bias on the part of these jurors sufficient to establish a Sixth Amendment violation of Petitioner's constitutional right to a fair and impartial jury.  Accordingly, Petitioner's claim in Ground One is without merit.

## C.   *Federal Habeas Standard of Review*

Because this federal *habeas* petition was filed on September 5, 2015, and Petitioner fairly presented his claim in Ground Two to the state courts, the standard of review for Ground Two  is set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA).  *Knox v. Johnson,* 224 F.3d 470, 476 (5th Cir. 2000); *Orman v. Cain,* 228 F.3d 616, 619 (5th Cir. 2000).[4] AEDPA substantially restricts the scope of federal review of state criminal court proceedings in the interests of federalism, comity, and finality of judgments.

---

[4] Before enactment of AEDPA, "a federal court entertaining a state prisoner's application for *habeas* relief   . . .  exercise[d] its independent judgment when deciding both questions of constitutional law and mixed constitutional questions (i.e., application of constitutional law to fact).  In other words, a federal *habeas* court owed no deference to a state court's resolution of such questions of law or mixed questions."  *Montoya ,* 226 F.3d at 403-04 (citing *Williams v. Taylor,* 529 U.S. 362 (2000) and 28 U.S.C. S 2254(d)).

*Montoya v. Johnson*, 226 F.3d 399, 403-04 (5th Cir. 2000) (citing *Teague v. Lane,* 489 U.S. 288, 306 (1989) and *Williams v. Taylor,* 529 U.S. 362 (2000))[5] (noting that AEDPA "placed a new restriction on the power of federal courts to grant writs of *habeas corpus* to state prisoners").

Title 28 U.S.C. § 2254(d) as amended, states as follows:

**(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d), as amended, this court must give deference to a state court decision for "any claim that was adjudicated on the merits in State court proceedings" unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or the decision "was based on an unreasonable

___

[5]Justice O'Connor delivered the opinion of the Court with respect to the standard of review, while Justice Stevens delivered the opinion of the Court with respect to other aspects of the opinion which have no bearing on the issues herein.

21

determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

A *habeas* petitioner has the burden under AEDPA to prove that he is entitled to relief.  *Ormon*, 228 F.3d at 619 (citing *Williams,* 529 U.S. at 402-03, and *Engle v. Isaac*, 456 U.S. 107, 134-35 (1982)).  Under § 2254(d), as amended, "[t]he federal courts no longer have a roving commission to discern and 'correct' error in state court proceedings, but must exercise a more limited review . . . ."  *Grandison v. Corcoran*, 78 F. Supp. 2d 499, 502 (D. Md. 2000).  Federal courts may not grant the writ merely on a finding of error by a state court or on a finding of mere disagreement with the state court.   *Montoya,* 226 F.3d at 404;  *Orman,* 228 F.3d at 619.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a  set of materially indistinguishable facts."  *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000); *Montoya,* 226 F.3d at 403-04.  "The 'contrary to' requirement 'refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision.'"  *Dowthitt,* 230 F.3d at 740.

Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt,* 230 F.3d at 741.  The standard is one of objective reasonableness. *Montoya,* 226 F.3d at 404.  A federal *habeas* court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly . . . [r]ather, that application must also be unreasonable." *Williams,* 529 U.S. at 411.

Section 2254(d)(2) speaks to factual determinations made by the state courts. *Dowthitt,* 230 F.3d at 741.  Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence. *Id.*  Thus, this court must defer to the state court's decision unless it was based on an unreasonable determination of the facts in light of the record of the State court proceeding. *Id.* (citing 28 U.S.C. § 2254(d)(2)); *Knox,* 224 F.3d at 476.

In sum, "[a] state court's determination that a claim lacks merit precludes federal *habeas* relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86 (2011). Thus, under § 2254(d), "[a]s a condition for obtaining *habeas corpus* from a federal court, a state

23

prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 102–103.  "If this standard is difficult to meet, that is because it was meant to be."  *Id.* at 102.

### 1.   *Sufficiency of the Evidence*

Petitioner claims in Ground Two that his due process rights were violated because the evidence submitted at trial was insufficient to show that Petitioner committed second degree murder.  (Doc. 1 at p. 5; Doc. 1-1 at pp. 14, 18.)  Petitioner contends that "the record is devoid of sufficient credible evidence" to support a murder conviction because: (1) the witnesses descriptions of the shooter "varied considerably;" (2) that none of the eight witnesses present at the club positively identified Petitioner as the shooter; (3) witness Lindsey Derouen was motivated to testify against Petitioner; and (4) the ski mask worn by the shooter contained DNA from Petitioner and two other individuals.  (Doc. 1-1 at 18-22.)  Respondent counters that the state court's decision denying Ground Two should be given deference and that Ground Two, therefore, should be denied on the merits.  (Doc. 21-1 at pp. 33-35.)

The standard for reviewing the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the government, *any* rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-319 (1979) (emphasis added); *Gibson v. Collins*, 947 F.2d 780, 781 (5ᵗʰ Cir. 1991).  Thus, a federal court "may find the evidence sufficient to support a conviction even though the facts also support one or more reasonable hypothesis consistent with the defendant's claim of innocence." *Gibson*, 947 F.2d at 783.  Stated differently, an applicant is entitled to *habeas corpus* relief only if it is found that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.*; *West v. Johnson,* 92 F.3d 1385, 1393 (5ᵗʰ Cir. 1996).

This court applies the *Jackson* standard "giving great weight to the state court's determination." *Gibson*, 947 F.2d at 782, 786; *Porretto v. Stalder*, 834 F.2d 461, 467 (5ᵗʰ Cir. 1987).  Both direct and circumstantial evidence can contribute to the sufficiency of the evidence underlying the conviction. *Schrader v. Whitley*, 904 F.2d 282, 287 (5ᵗʰ Cir. 1990.  The fact that most of the evidence against a defendant was circumstantial does not change the standard of review.  *United States v. Zuniga-Salinas*, 945 F.2d 1302, 1305 (5ᵗʰ Cir. 1991).

 Review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, as those determinations are the exclusive province of the jury.  *United States v. Young*, 107 Fed.Appx. 442, 443 (5ᵗʰ Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5ᵗʰ Cir. 1993));

*Green v. Johnson,* 160 F.3d 1029, 1047 (5th Cir. 1998); *Jackson,* 443 U.S. at 319 (noting that it is the jury's responsibility to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts.").

Accordingly, "whether judges doubt the credibility of a witness, even an accomplice witness cooperating with the government, is beside the point . . . ." *U.S. v. Greenwood*, 974 F.2d 1449, 1458 (5th Cir. 1992).  All credibility choices and conflicting inferences are to be resolved in favor of the verdict.  *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) (citing *U.S. v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999)).  The reviewing court is not authorized to substitute its interpretation of the evidence for that of the fact finder.  *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).

Petitioner presented his claim in Ground Two to the State First Circuit.  *Lewis*, 2013 WL 5915213, at *4-8.  In applying the *Jackson* standard, the State First Circuit rejected this ground for relief:

> [W]e cannot say that the jury's determination was irrational under the facts and circumstances presented to them.  Furthermore, an appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury.  We are convinced that any rational trier of fact, viewing the evidence presented at trial in the light most favorable to the State, could have found the evidence proved beyond a reasonable doubt and to the exclusion of every reasonable hypothesis of

26

innocence, all of the elements of second degree murder and [Petitioner's] identity as the perpetrator.

*Id*. at \*8.  The Louisiana Supreme Court denied Petitioner's claim in Ground Two when it denied his writ without comment.  *Lewis*, 147 So. 3d 691.   As discussed below, the undersigned finds that the state court's decision regarding Ground Two is not objectively unreasonable.

Second degree murder is defined in pertinent part as the killing of a human being "[w]hen the offender has a specific intent to kill or to inflict great bodily harm."  La. R.S. 14:30.1(A)1).  "Specific criminal intent is that 'state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.'"  *Lewis*, 2013 WL 5915213, at \*5 (quoting La.R.S. 14:10(1)).  Specific intent may be inferred from a defendant's act of pointing a gun and firing either at a person or in the general direction of a crowd.  *Id.*  Under the doctrine of transferred intent, a defendant who shoots at one person or group of persons with the specific intent to kill or harm them is guilty of second degree murder if his bullet "unintentionally" kills a person he did not intend to harm.  *State v. Williamson*, 805 So. 2d 1235, 1240 (La.App. 2d Cir. 2002).

At trial, the State introduced compelling evidence that Petitioner committed the crime of second degree murder.  Specifically, the following pertinent witness testimony was presented:

(1)     Anthony Watson, a passenger in the car being driven by the victim, testified that a man in a black mask approached his group of friends just outside Johnny Bo's Night Club, pulled out a gun, and shot multiple times as the group ran for cover.  (Doc. 22-6 at p. 62.)

(2)     Christopher Banks testified that, after he met with the victim and Watson, a man with a black mask halfway up his head and wearing khakis and a dark shirt approached a group of people and pulled out his gun to fire shots.  (Doc. 22-7 at pp. 4-6, 8.)

(3)     Banks later identified Petitioner from a photograph as the shooter, which acknowledging he was not sure of the identification.  (Doc. 22-7 at p. 6.)

(4)     Shannon Clavelle, who had encountered Petitioner earlier that evening, identified Petitioner from both a photo array and a video taken that night and indicated he saw Petitioner with cargo pants similar to the ones worn by the shooter.  (Doc. 22-7 at pp. 46, 48, 52.)

(5)     Ladaisha Welch, who was at the club on the night of the shooting identified Petitioner as wearing a dark shirt and light/khaki shorts heading towards the club and then observed a person wearing the same attire running away from the club after the shots were fired. (Doc. 22-7 at pp. 67.)

(6)     Sonia McDaniel, who was at the club that evening, identified Petitioner in a photo array as the person who had dropped a gun three minutes after the shooting.  (Doc. 22-7 at pp, 76-77.)

(7)     Lindsey Derouen testified that she knew Petitioner as he was a friend of her ex-boyfriend, that Petitioner had informed her after the shooting that he had left a gun in her house, that Petitioner asked Derouen to get rid of the gun, that she took the police to the area where she had disposed of the gun in the bayou, and that Petitioner had asked her not to testify before the grand jury. (Doc. 22-8 at 20.)

28

(8)    Derouen identified at trial the gun that she had thrown into the bayou.  (Doc. 22-8 at p. 19.)

(9)    Deputy Hines testified that he had discovered near the scene of the murder a black mask.  (Doc. 22-8 at p. 31.)

(10)    Deputy Weidenboerner testified that he recovered the gun in the bayou where Derouen had disposed of it.  (Doc. 22-8 at p.38.)

(11)    Mark Kurowski, an expert in forensics analysis, tested the gun and bullets recovered and determined that the gun was used to kill the victim.  (Doc. 22-9 at pp. 40-41.)

(12)    Bethany Harris, an expert DNA analyst, tested the ski mask by obtaining a DNA profile which revealed that the mask had a mixture of DNA with Petitioner as the major contributor and at least two minor contributors.  (Doc.  22-9 at pp. 47-48.)

In light of the above and the undersigned's review of the entire record, viewing the evidence in the light most favorable to the prosecution as is required by *Jackson* and its progeny, the evidence presented at trial was more than sufficient to sustain Petitioner's convictions of second degree murder on federal *habeas* review. Considering  the "great weight" afforded  to the state court's determination and the above summarized evidence, the undersigned finds that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Under the appropriate standard of review, the undersigned cannot find that the state court's decision as to Ground Two was contrary to, or an unreasonable application of, federal law, or that the state court's factual determinations were unreasonable in

light of the State court record.  Accordingly, Petitioner is not entitled to federal *habeas corpus* relief as to this ground.

## *CONCLUSION*

For the reasons set forth above,

**IT IS RECOMMENDED** that Petitioner Quentin O. Lewis's petition for federal *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A  party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

30

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.   **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

**THUS DONE AND SIGNED** at Lafayette, Louisiana, this 3rd  day of February, 2017.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**

31